**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL JAROCH, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 17 C 8518 |
| ) | |
| FLORIDA FRUIT JUICES, INC., ) | Judge Virginia M. Kendall |
| DONALD FRANKO, SR., ) | |
| DONALD FRANKO, JR., ) | |
| WILLIAM J. FRANKO, ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Daniel Jaroch ("Jaroch") was an employee of Defendant Florida Fruit Juices, Inc. ("FFJ") from 1999 until 2017. Shortly following Jaroch's termination, he sued FFJ and three FFJ executives, alleging that they violated the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by not giving him overtime pay, as well as the Illinois Wage Payment and Collection Act ("IWPCA") by not paying certain bonuses. Jaroch also brings a common law claim for conversion. Defendants now move for summary judgment and seek sanctions against Jaroch for alleged witness tampering. For the reasons set forth below, Defendants' Motion for Summary Judgment (Dkt. 89) is denied in part and granted in part, and their Motion for Sanctions (Dkt. 95) is granted in part.

**I.     MOTION FOR SUMMARY JUDGMENT**

   **A.     Background**

FFJ is a company that packages fruit juice drinks in Chicago, Illinois. (Dkt. 105 ¶ 1.) At all times relevant to this litigation Donald Franko, Sr. was the CEO and President of FFJ, and Defendant Donald Franko, Jr. was the Vice President. (Dkt. 105 ¶¶ 2–3.) Defendant William

1

Franko has been the Vice President of Quality Assurance and the Safe Quality Food Practitioner since September of 2014. (*Id.* ¶ 4.)

Jaroch worked for FFJ between 1999 and 2017. (Dkt. 105 ¶ 8.) Almost immediately after he began working at FFJ, Jaroch was paid on a salary basis. (Dkt. 105 ¶ 10.) In 2013, Jaroch's salary was $81,010 per year; by 2017, his salary was $92,125 per year. (Def. Ex. D at p. D00001.) On a weekly basis, Jaroch's salary was $1,400 in 2014 and $1,674 in 2015, 2016, and 2017. (Dkt. 105 ¶ 12.) Between 2014 and 2017, Jaroch had the highest salary of anyone at FFJ not named "Franko." (Dkt. 105 ¶ 13.)

During the last three years of Jaroch's employment, Donald Franko, Sr. would come to the office for a few hours every day to oversee the accounts payable. (Dkt. 105 ¶ 70.) Jaroch testified that Donald Franko, Sr. hired him and made him a salaried employee. (*Id.* ¶ 71.) Between 2014 and 2017, however, Donald Franko, Sr. had no responsibilities pertaining to hiring or firing of employees and was not involved in payroll. (*Id.* ¶ 71.)

As of May 9, 2014, FFJ produced a job description document for a job called "Maintenance Technician." (Dkt. 106-2 at pp. 16–17.) Jaroch signed this document on May 9, 2014, indicating that the description pertained to his position. (*Id.* at p. 17.) The job summary in this document reads: "The Maintenance Technician is accountable for entire plant maintenance including equipment, building, grounds and transport equipment. The maintenance technician looks for ways to improve the metrics of the operation through hands on application." (*Id.* at p. 16.) The job description does not list any supervisory functions. The job description also includes the following "additional responsibility:" "In the event of an absence, perform the necessary duties of the maintenance manager including participating in food safety team meetings and inspections." (*Id.*)

Defendants Donald Franko, Jr. and William Franko both testified that Jaroch's title at FFJ was "Maintenance Manager." (Dkt. 105 ¶ 9; Dkt. 90-2 at p. 3; Dkt. 90-3 at p. 9). As of February 2, 2017, FFJ's organizational structure chart lists Jaroch as "Maintenance Manager." (Dkt. 90-4 at p. 19.) The chart indicates that as Maintenance Manager Jaroch oversaw "maintenance personnel and plant employees." (*Id.*) According to Jaroch, however, he never referred to himself as the maintenance manager; instead, he testifies that he held the position of "maintenance technician and builder." (Dkt 90-1 at p. 21.)

In his deposition, William Franko referred to Jaroch as the "Maintenance Manager." (Dkt 90-3 at p. 9.) William Franko testified that as Maintenance Manager, Jaroch's "duty was to manage the maintenance department, which is a formal department in the company, which entails the managing of employees who have maintenance-related duties." (*Id.*) Additionally, William Franko testified that Jaroch "was in charge of bringing in employees to the company, finding maintenance technicians to work alongside him in the maintenance department, and he was also in charge of setting the hours and directing the work of those employees who were directly underneath him." (*Id.* at p. 10.)

Donald Franko, Jr. testified that he hired Jaroch as a Maintenance Manager to "handle the maintenance function and to also keep [the] production lines running and to train and supervise production employees on any maintenance-related items, set-up, how to maintain the equipment." (Dkt. 90-2 at p. 4.) He also testified that initially Jaroch only was able to provide recommendations regarding hiring and firing of employees, but that within the first five years of his career at FFJ, Jaroch "did hiring and firing for maintenance personnel." (Dkt. 90-2 at pp. 4–5.) Donald Franko, Jr. also testified that Jaroch would train new line workers on how to run the equipment at the FFJ plant. (Dkt 90-2 at pp. 11, 23.)

Keith Durkin and Alejandro Salgado, each of whom served as FFJ's Operations Manager at different times, also provided sworn affidavits indicating that Jaroch was the Maintenance Manager and that in that position he was responsible for "supervising, training, and managing full-time and part-time maintenance workers." (Dkt. 90-5 at p. 2; Dkt. 90-6 at p. 2.) Durkin and Salgado also explained that Jaroch was responsible for "making recommendations to senior management regarding hiring, disciplining, and firing maintenance employees." (*Id.*)

Salvador Lopez Baeza and Ricardo Velazquez both provided affidavits indicating that Jaroch used to supervise them in their tasks. (Dkts. 90-7; 90-8.) Lopez Baeza, a FFJ forklift operator, indicates that Jaroch would "supervise and train [him] and other shipping department personnel on proper use and maintenance of the forklifts." (Dkt. 90-7 at p. 2.) Velazquez, FFJ's Head Mixer, indicates that Jaroch would "supervise and train [him] and other mixing room personnel on a daily basis on the maintenance of mixing room equipment." (Dkt. 90-8 at p. 2) Both Velazquez and Baeza indicate that they witnessed Jaroch manage, train and supervise other employees on a weekly basis. (Dkt. 90-7 at p. 2; Dkt. 90-8 at p.2.)

In contrast to the testimony of the Frankos, Durkin, Salgado, Lopez Baeza, and Velazquez, Jaroch testified that his job duties did not include interviewing, hiring, or training employees. (Dkt. 90-1 at p. 47.) Jaroch also testified that he neither evaluated nor supervised other FFJ employees. (*Id.*) At various times during Jaroch's employment, he had people assist him in the maintenance shop. But according to Jaroch, none of these employees, like Maxwell Aloya and Sean Daugherty, were dedicated employees assigned to work under him. (Dkt. 106 ¶ 6; Dkt. 105 ¶¶ 47–49.) Indeed, Jaroch testified that many FFJ line workers did not speak English, were afraid of Jaroch (who only speaks English), and were told to stay away from him. (Dkt. 106 ¶ 13.)

Jesus Aguilar and Zumbair Kimani, two other FFJ employees, both filed sworn affidavits indicating that they never saw Jaroch supervising anyone during their time as FFJ employees. (Dkt. 106-2 at pp. 3, 8.) Kimani noted that Jaroch occasionally had the assistance of an employee who was hired to work for the Plant Manager, but this assistance was "so uncommon that . . . Jaroch did 99% of the maintenance work for FFJ." (Dkt. 106-2 at p. 8.)

In 2016, the Department of Labor ("DOL") opened an investigation into FFJ's wage practices. (Dkt. 106 ¶ 15.) A document sent to DOL in 2016 in connection with the investigation listed Jaroch as the "Maintenance Manager," but the listed description of his responsibilities did not include any information indicating that this person interviewed, selected, trained, evaluated, or supervised any other FFJ employees. (Dkt. 106-2 at p. 14.) The full description of the position reads:

> Maintenance Manager: Accountable for complete maintenance activities associated with the beverage producing operation to achieve an efficient and effective preventative maintenance program for the plant while keeping downtime to a minimum. Ensure that the facility complies with all OSHA and EPA related policies including state, federal and local rules and regulations. Support all safety programs that apply to Florida Fruit Juices facilities and coordinate efforts to assure all employees have a safe and healthy work environment. Responsible for the proper functioning of all equipment inside the facility. Purchases all tools and parts necessary for the daily operations of the facility and production equipment. Develop and maintain work order system including tracking work orders through to closure and maintaining a system of tracking. Establish a documented preventative maintenance program including document, schedule and tracking system. Complete tasks in accordance with the schedule.

(*Id.*) In December 2016, DOL issued a report discussing supervision of employees by Donald Franko, Jr., Alex Salgado, and Carol Douglas. (Dkt. 115 ¶ 23.) The report specifically mentions that Franko, Jr. and Salgado hired and fired employees. (*Id.*) The report makes no mention of Jaroch supervising, hiring, or firing employees. (*Id.*)

5

In September of 2017, Jaroch's employment at FFJ ended, and FFJ replaced him with an hourly employee. (*Id.* ¶¶ 24, 25.)

B.  **Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of material fact exists, the Court draws all reasonable inferences in favor of the party opposing the motion. *Anderson,* 477 U.S. at 255; *see also Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018).

C.  **Limitations Periods and Equitable Tolling**

As an initial matter, the Court must discern the relevant time period for the allegations in this case. Jaroch worked at FFJ from 1999 until September 28, 2017. He then filed this lawsuit on November 25, 2017. The FLSA contains a two-year limitations period for non-willful violations of the statute and a three-year limitations period for willful violations. 922 U.S.C. § 255(a). In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), the Supreme Court held that an employer willfully violates the FLSA when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." If an employer acts reasonably in determining its legal obligations under the FLSA, its actions cannot be willful for purposes of the FLSA limitations period calculation. *McLaughlin*, 486 U.S. at 135. A plaintiff seeking to invoke the three-year limitations period bears the burden of providing evidence that the employer willfully violated the plaintiff's statutory rights. *Sampra v. U.S. Dep't of Transp.*, 888

F.3d 330, 333–34 (7th Cir. 2018). Defendants do not appear to seek summary judgment on the willfulness issue and neither party briefed the Court on this question. As such, whether any alleged FLSA was willful will be a question for trial.

The IMWL contains a limitations period of three years. 820 ILCS 105/12. Unlike the FLSA, the limitations period is fixed at three years; there is no variability depending on the employer's *mens rea*. *Id.* Claims brought under the IWPCA, by contrast, are subject to a five-year limitations period. *People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 996 (Ill. App. Ct. 2003).

Regardless of the applicable limitations periods, Jaroch seeks equitable tolling such that he could recoup all alleged under-payments and non-payments dating back to the beginning of his employment in 1999. The Court can apply equitable tolling if Jaroch demonstrates that he diligently pursued his rights under the statutes and some extraordinary circumstance stood in the way of him timely filing. *See McQuiggin v. Perkins*, 589 U.S. 383, 391 (2013). In support of his claim for tolling, he contends that Defendants failed to post any notice regarding the FLSA or IMWL until sometime in 2015 or later, which left him unaware of his statutory rights. (Dkt. 30 ¶ 102.) Jaroch, however, provides no factual basis in the record for this contention. Donald Franko, Jr., by contrast, testified that he personally ordered and posted the required FLSA and IMWL notices during his entire time at FFJ. (Dkt. 105 ¶¶ 72–73.) William Franko likewise testified that the posters were always posted at the FFJ facility ever since he began working there in 2014. (*Id.* ¶ 74.) The only evidence before the Court suggests that FFJ had posted the requisite information. Jaroch has therefore failed to demonstrate that he diligently pursued his rights or that some extraordinary situation prevented him from filing this lawsuit earlier. As such, the Court denies Jaroch's request for equitable tolling.

Because the Court denies the request for tolling, the applicable limitations periods will apply to this case. The relevant time frames for each claim are as follows: November 25, 2012 to November 25, 2017 for the IWPCA claim; November 25, 2014 to November 25, 2017 for the IMWL claim; and either November 25, 2014 to November 25, 2017 or November 25, 2015 to November 25, 2017, depending on whether Jaroch can demonstrate at trial that the alleged FLSA violations were willful.

**D.   Discussion**

*a.   FLSA Claim Against Donald Franko, Sr.*

The FLSA subjects "employers" to liability for violating the statute. The statute defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts assess the "economic reality" of the working relationship to determine whether an individual or entity is an employer under the FLSA. *Berger v. Nat'l Collegiate Athletic Assoc.*, 843 F.3d 285 (7th Cir. 2016). Relevant factors in assessing the economic reality of the relationship include whether the alleged employer: "'(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Foday v. Air Check, Inc.*, 15-cv-10205, 2018 WL 3970142, at *3 (N.D. Ill. Aug. 20, 2018) (quoting *Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F.Supp.3d 767, 778 (N.D. Ill. 2015)).

Jaroch makes no allegations about Donald Franko, Sr. tending to show an economic reality that Franko, Sr was Jaroch's employer during the relevant time period. While Franko, Sr. may have qualified as Jaroch's employer in earlier years because he hired Jaroch and made the decision to make Jaroch a salaried employee, the record shows that Franko, Sr. had more limited

8

involvement in the operation of FFJ in the years relevant to this litigation. There is no evidence in the record that Franko, Sr. had the power to fire Jaroch, supervised Jaroch's work schedule or conditions of employment, determined Jaroch's pay, or maintained any records pertaining to Jaroch between 2012 and 2017. As there are no facts in the record indicating an "economic reality" that Donald Franko, Sr. was Jaroch's employer during the relevant period, Donald Franko, Sr. is entitled to judgment as a matter of law on the FLSA claim against him.

### b. State Law Claims against Donald Franko, Sr.

The IWPCA subjects individual defendants to liability if they are officers of a corporation and "knowingly permit" the corporation to violate the statute. 820 ILCS 115/13. The IWPCA, requires, among other things, that employers pay employees at certain specified times. 820 ILCS 115/3–5. There is no allegation in the record that Donald Franko, Sr. took part in any payroll decisions during the period relevant to this litigation or that he knowingly permitted anyone to violate the statutory rules related to the payment of wages. Accordingly, Donald Franko, Sr. is entitled to judgment as a matter of law on the IWPCA claim against him.

The IMWL provides that employers must pay employees the minimum wage and must pay overtime wages for time worked over forty hours per week. 820 ILCS 105/4. The IMWL subjects individuals with sufficient control over a business to personal liability for violations of the IMWL. *Cho v. Maru Restaurant, Inc.*, 194 F.Supp.3d 700, 704 (N.D. Ill. 2016).[1] As with the IWPCA claim, there are no facts in the record indicating that Donald Franko, Sr. had any control over payroll decisions during the period relevant to this litigation. Accordingly, Donald Franko, Sr. is entitled to judgment as a matter of law on the IMWL claim against him.

---

[1] The other individual defendants, William Franko and Donald Franko, Jr., seek summary judgment on all claims as well, but not on the basis that they do not qualify as employers who are subject to individual liability under the FLSA, IMWL, and IWPCA.

Count IV of Jaroch's Complaint alleges a conversion claim against all four Defendants. However, Jaroch does not allege, nor has discovery exposed, any facts suggesting that Donald Franko, Sr. had any involvement whatsoever in the alleged conversion. Donald Franko, Sr. is therefore entitled to judgment as a matter of law as to the the conversion count and all other claims against him.

### c. *FLSA Overtime Claim Against Remaining Defendants*

Defendants' sole defense for purposes of the FLSA overtime claim against FFJ is that Jaroch was an "executive" at FFJ and therefore did not qualify for FLSA overtime protections. An employee engaged in a "bona fide executive, administrative, or professional capacity" is not eligible for the overtime protections provided by the FLSA. 29 U.S.C. § 213(a)(1). An employee qualifies for this executive employee exemption if: (1) the employee is compensated at a rate no less than $684 per week; (2) the employee's primary duty is management of the enterprise or management of a customarily recognized department or subdivision of a department; (3) the employee customarily and regularly directs the work of two or more other employees; and, (4) the employee has the authority to hire or fire other employees or the employee's suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 CFR § 541.100. The parties in the instant matter do not dispute that FFJ paid Jaroch at least $1,400 per week during the relevant period, more than the $684 per week needed to qualify as an executive. (Dkt. 105 ¶ 12.) The parties do, however, dispute the three other elements of the executive exemption, which the Court addresses in turn.

#### i. Jaroch's Primary Duty

Evidence presented by Jaroch suggests that maintenance—not management—was his primary duty. Jaroch testified that his primary job responsibility was maintaining equipment at the

FFJ plant as the Maintenance Technician and Builder. (Dkt. 90-1 at p. 21.) Affiant Kimani affirmed Jaroch's testimony by stating that Jaroch did 99% of the maintenance work at the FFJ plant himself. (Dkt. 106-2 at p. 8.) Likewise, neither written job description suggests that management was Jaroch's primary duty. (Dkt. 106-2 at pp. 14–17.) The 2014 written description of Jaroch's job does not include any mention of management; indeed, that document suggests that there was another person at the company whose title was "maintenance manager" and that the maintenance technician would sometimes have to fill in for the maintenance manager in his absence. (*Id.* at p. 16.) The job description provided to DOL in 2016 describes Jaroch's work as focused on maintenance. (*Id.* at p. 14.) For example, the DOL description says that the Maintenance Manager is "[a]ccountable for complete maintenance activities" and "[r]esponsible for the proper functioning of all equipment inside the facility." (*Id.*)

The only evidence in the record tending to suggest that Jaroch's primary duty was management comes from William Franko's own deposition at which he testified that as "Maintenance Manager," Jaroch's duty was to manage the maintenance department. (Dkt. 90-3 at p. 9.) However, Defendants' own affiant, Keith Durkin, listed Jaroch's first responsibility as "maintaining and repairing production equipment and facilities." (Dkt. 90-5 at p. 2.)

The parties genuinely dispute whether Jaroch's primary duty was management. Jaroch has presented sufficient evidence in the form of depositions, written documentation, and affiant testimony to create a genuine issue of material fact about his primary duty as an FFJ employee.

    ii.  Directing the Work of Others

Defendants present some evidence suggesting that Jaroch customarily and regularly directed the work of others. William Franko testified that Jaroch directed employees who worked underneath him. (Dkt. 90-3.) Velazquez and Baeza Lopez indicate that Jaroch used to supervise

11

and train them in their job tasks, and that they saw Jaroch supervising, managing, and training the work of other employees on a weekly basis. (Dkts. 90-7; 90-8.) Jaroch also admitted that he occasionally had the assistance of other full and part-time employees, including Sean Daugherty and Maxwell Aloya. (Dkt. 105 ¶¶ 46–49.)

Other evidence in the record suggests that Jaroch did not in fact regularly and customarily direct the work of others. For example, neither written job description that FFJ produced for Jaroch's job mentions directing the work of others. (Dkt. 106-2 at pp. 14–17.) Additionally, although Jaroch admitted that he occasionally had assistance from some full-time and part-time employees, such infrequent assistance does not indicate that he regularly and customarily directed the work of others. And although Velazquez and Baeza Lopez indicate that they saw Jaroch supervising others, they do not name the individuals he allegedly supervised. (Dkts. 90-7; 90-8.)

Given the divergent testimony in the record, Jaroch has presented sufficient evidence to establish a genuine issue of material fact about whether he regularly and customarily directed the work of others.

iii. Authority over Hiring and Firing

Defendants contend that the record before the Court indicates that Jaroch had authority over hiring and firing. Defendants specifically claim that Jaroch suggested the hiring of Sean Daugherty, Jesus Aguilar, and Joshua Reilly and that senior management gave his suggestions particular weight. (Dkt. 105 ¶¶ 47–54.) They also suggest that Jaroch himself fired Sean Daugherty. (Dkt. 105 ¶ 50.) Donald Franko, Jr. testified that during the last several years of Jaroch's employment, Jaroch did the hiring and firing of maintenance personnel. (Dkt. 90-2 at pp. 4–5.) Likewise, William Franko testified that Jaroch was responsible for bringing in new employees to the maintenance department. (Dkt. 90-3 at p. 10.)

In contrast to the Franko's testimony, Jaroch denied in his deposition that he had authority over hiring and firing. (Dkt. 90-1 at p. 47.) Jaroch also points to the fact that neither written description of Jaroch's job includes any reference to the hiring or firing of employees. He also contends that he never specifically hired anyone. (*Id.*) He does admit that he fired Sean Daugherty, but that he only did so at the express direction of Donald Franko, Jr. (Dkt. 105 ¶ 50.) Finally, Jaroch notes that the 2016 DOL report specifically mentions that other FFJ employees hired and fired employees, but it makes no mention of Jaroch ever hiring or firing anyone. (Dkt. 115 ¶ 23.) On this record, Jaroch has raised a genuine issue of material fact regarding whether he had authority over hiring and firing.

Defendants have not satisfied the last three elements of the executive exemption as a matter of law, so the Court finds that there is a genuine issue of material fact about whether Jaroch was an "executive" under the FLSA and associated regulations. Accordingly, FFJ, Donald Franko, Jr., and William Franko are not entitled to judgment as a matter of law on Count I, the FLSA claim.

### d. *State Law Claims Against Remaining Defendants*

FFJ, Donald Franko, Jr., and William Franko seek summary judgment on the IWPCA, IMWL, and conversion claims (Counts II–IV) against them, all on the basis that if the Court were to grant summary judgment on the FLSA claim, then the Court would lack supplemental jurisdiction over these state law claims. As the Court is not entering summary judgment on the FLSA claims, the Court also denies summary judgment as to the state law claims against these three defendants.

### III. MOTION FOR SANCTIONS

#### A. Background

Ricardo Velazquez, FFJ's Head Mixer, filed an affidavit with this Court on April 17, 2019 in which he indicated that Jaroch used to supervise and train Velazquez on the maintenance of mixing room equipment. (Dkt. 90-8.) He also stated that he regularly observed Jaroch supervising and training other line workers on maintenance of the mixing room equipment. (*Id.*) Of course, this testimony was potentially harmful to Jaroch's claims in this case because it tends to support Defendants' argument that Jaroch was exempt from the overtime provisions of the FLSA.

After learning that Velazquez had provided this affidavit to the Court, Jaroch called Velazquez on May 2, 2019 and left him a voice message. In the message, Jaroch stated:

> Ricardo, this is Dan.
>
> Ricardo, I told you don't get involved because now you're going to get sued. I don't want to sue you.
>
> You're good guys. You shouldn't have gotten involved. Because now it's bad. Believe me this is all bad.
>
> I told you, do not get involved. So I hope Donny [Donald Franko, Jr.] got money for a lawyer for you, cause that's what's gonna happen now.
>
> Give me a call if you want. If not, I told you not to get involved, so you're going to see. I tried to tell you so. If you want to call me, fine. If not, I feel sorry for you guys, so I'll talk to you.

Following this call, Defendants' filed a motion for sanctions, seeking dismissal of the case on the grounds that this message constituted witness tampering. (Dkt. 95.)

#### B. Discussion

Witness tampering is "among the most grave abuses of the judicial process, and as such it warrants a substantial sanction." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016).

14

District courts have inherent authority to sanction parties that have "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015). Courts may exercise this authority "not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009). Sanctions issued under the Court's inherent authority can range from an admonishment, to the award of attorneys' fees, to the outright dismissal of an action. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Courts have ordered outright dismissal as a sanction for a variety of litigation misconduct. *See, e.g. Ramirez*, 845 F.3d 772 (affirming outright dismissal of a case in which the plaintiff paid a witness in exchange for favorable testimony); *Ridge Chrysler Jeep LLC v. Dahmler Chrysler Financial Services Americas LLC*, 516 F.3rd 623 2008 (Affirming dismissal of case as sanction where Plaintiff deceived district court judge in order to obtain an order worth $.5 million, destroyed evidence and abused federal court's process: "Plaintiffs have behaved like a pack of weasels. . .") *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F.Supp.3d 896 (N.D. Ill. 2017) (granting outright dismissal of a counterclaim where the defendants had fabricated an email that purportedly altered the terms of the parties' contractual relationship and then used the fabricated email in the litigation); *Mohammed v. Anderson*, 18-cv-8393, 2019 WL 3943669, at *3 (N.D. Ill. Aug. 21, 2019) (granting outright dismissal and awarding fees where the plaintiff orchestrated a "long-running campaign of harassment" by sending at least a dozen harassing and profane emails to defense counsel). However, outright dismissal is a "particularly severe sanction," so it must be exercised with "restraint and discretion." *Chambers*, 501 U.S. at 44–45.

In the instant matter, the Court finds that Jaroch intended to intimidate Velazquez by threatening to sue him for having filed an affidavit that tended to support Defendants' theory of the case. The intimidation was meant to discourage Velazquez from any further cooperation with Defendants' counsel and to encourage him to withhold further testimony at trial. This intimidation constitutes a willful abuse of the judicial process. It is not as severe as the misconduct for which courts typically order outright dismissal.

The most appropriate sanction for Jaroch's wrongful intimidation is an award of attorneys' fees and costs. The extreme sanction of outright dismissal is not warranted because the damage to the judicial process stemming from this intimidation is not grave, and the conduct is not as severe as the above-referenced examples that led to outright dismissal. Velazquez already filed his affidavit, which the Court considered for purposes of the Motion for Summary Judgment. If the intimidation had occurred prior to the filing of the affidavit, then there would be additional cause for concern about the effects of the intimidation. Of course, Jaroch's intimidation could discourage Velazquez from testifying at an eventual trial in this case, but that is just speculation at this point. The record thus far does not indicate that Jaroch's intimidation has had any effect on the testimony presented to the Court. Nonetheless, Jaroch's intimidating behavior is unacceptable for a litigant in this Court, as it interferes with this Court's mandate to discover the truth. The Court must sanction Jaroch so as to deter him and other litigants from engaging in this sort of conduct in the future. The Court therefore orders Jaroch to pay all of Defendants' fees and costs associated with the preparation and filing of this motion for summary judgment and the motion for sanctions. Defendants shall submit their fee and cost petition on or before 4/15/20.

## CONCLUSION

The Court grants in part and denies in part Defendants' Motion for Summary Judgment. [89]. A material fact dispute remains that precludes the Court from entering summary judgment on all claims against Defendants FFJ, William Franko, and Donald Franko, Jr. The Court grants summary judgment on all claims against Defendant Donald Franko, Sr. because no evidence in the record indicates his involvement in the events giving rise to the claims in this case. The Court also denies Jaroch's request for equitable tolling of the relevant limitations periods.

The Court grants Defendants' Motion for Sanctions in part. [95]. As a sanction for Jaroch's witness tampering, the Court orders Jaroch to pay all of Defendants' costs and fees incurred in the in the preparation and filing of the Motion for Summary Judgment and the Motion for Sanctions. Defendants shall file their fees and costs on or before 4/15/20.

_____
Virginia M. Kendall
United States District Judge

Date: March 18, 2020